I'm here my name is Vicki Merle Buchanan and I'm here on behalf of Paul Richards the 53 page indictment in this case was confusing in the beginning the jury thought it was confusing when they received it after the verdict and after skilling trying to sort out the claims in this case is almost impossible except for the 20 honest services fraud count claims that are based squarely on a non-disclosure of conflict of interest is it difficult to assess this particular case and I thought perhaps one of the places to start would be the places where we the government and the defendants agree and we all agree that there are no honest services fraud allegations regarding campaign finance laws we all agree that there are no honest services fraud claims regarding the Regency billboard contract we all agree there are no honest services fraud claims based on litigation and we all agree that there are no honest services fraud instructions that include briberies or kickbacks and finally the government agrees that the jury may have found the defendants guilty on an invalid theory of honest services fraud what we should all agree on is that the case was tried from beginning to end and until the United States Supreme Court reversed it it was tried on a non-disclosure honest services fraud theory that is practically law the case because that when the case came to this court before the court said on one of our arguments about the breadth of the indictment that the case was pleaded and tried as a non-disclosure case a non-disclosure of conflict of interest in addition before the trial the government argued in pretrial and pretrial that it was a non-disclosure case it argued that at trial it argued that in its closing arguments in particular if you look at the closing arguments where the court is going through the jury instructions on honest services fraud not the inflammatory part of the argument but at pages 484 and 482 487 it's talking about lying it's talking about conflicts of interest it's talking about campaign disclosure laws it's talking about California state ethics laws so it's clear that up until the indictment was tried in that in that venue it is our position that all of the honest services fraud counts not just not just seven of them but all of them need to be dismissed and the government has not discussed the the case of McCormick, Dunn, Chiarella, Cole or Eaton which say if you're indicted on a particular count and you're not trying you and the case is overturned or even if there is evidence to support it it's just basic fundamental fairness I argued is structural error but it it it probably is structural error although courts don't say it they all say you cannot do it you cannot convict someone on a case that was not charged and the basis of it of it being pursued that's a 20 counts have to come out because they were on a squarely invalid count the next sections group of counts in this case are the eight money and laundering and that's where we get to what the government refers to as the alternate theory cases they were based on both the money and property fraud and also based on the honest services fraud and it's our position that under harmless error standard that those have to go too so then the question really comes down to is there anything left is there any are any of the claims valid in and of themselves without without spillover and certainly there can be an argument made that some of the claims could survive but I don't know how practically it would work for them to survive given having to go back for resentencing the PSR is all about non-disclosure it's all about honest services fraud it's all about the conflicts of interest the enhancements were based on things that have now been kicked out I don't know if you can unring the bell or as the Riley case said put the genie back into the bottle an interesting case in terms of the remedy in the situation that's worth looking at is a case I reviewed this week and going through all the myriad of cases that are winding their way through the courts after skilling is a Second Circuit case u.s. versus Bruno which is at 661 F 3rd 733 and that's a case like this one that was tried at a non-disclosure the government agreed conceded that it had to go back and the question that case was raised by the defendant if it goes back is there going to be double jeopardy if if the facts actually supported the bribery kickback theory and that case the problem is there were actual substantive bribery bribery and kickback counts weren't there no there was there were two six six bribery counts against mr. Thomas only and if you look at that particular those particular counts they do not have the quid pro quo language that's required for honest services bribery fraud like was mentioned in the end zooms a case but you didn't I my understanding of the record is that there were there was a general verdict that bound at least two of the defendants guilty of bribery bribery and kickbacks defendant Thomas two counts of bribery defendant Richards my client one count of extortion there were no other kickback or bribe accounts of the 39 counts so there were the two what do you do with that well you could do they could stand but they would have to go back for a reach for you know recent obviously resentencing an entirely new PSR they could stand they could all go with the on the basis of spillover because for instance it's hard to say and mr. Brainerd will probably talk about his client and this young will talk about their clients on how all this huge case that was actually spawned by the Regency contract which is out of the case the whole thing started because Regency's competitor brought it to the attention of its former attorney who is now a that's how the case all started and now that's the dog wagging the tail I mean it's it's gone the Regency was the big case and it's completely gone out of this it would be the best to from my client's position it would be best to just overturn everything and start fresh with a new indictment if a new superseding indictment but if those counts remain those three counts plus I don't know what the court wants to do with the and the case would have to go back for a new entirely new PSR and I don't know the government has mentioned in its brief the judge hopefully the judge can start afresh because he's had a very very long history with this particular case so that would be the suggestion is that because it is such a big case and so intertwined with the honest services fraud that are clearly not involved that the whole thing should start all over the remaining counts would be maybe as many as five days interestingly enough and then I'll sit down on the bribery counts that were alleged in this case they do not have any of the magic language that is quid pro quo which is in exchange for or in return for it's because it's a 666 count and the United States Supreme Court is right now deciding on whether a quid pro quo needs to be expressed or can be implied they they're deciding on whether they're going to take that issue up so those case those counts may once again be subject to review depending on what the court does thank you thank you counsel good morning your honors Catherine Young from the Federal Public Defender's Office for Appellant Paula Harris and I would like to reserve some of my time for rebuttal I want to talk about how Ms. Harris is uniquely situated even this even in this unique case as Judge Wardlaw mentioned there were some counts of bribery or extortion Ms. Harris was never charged with bribery or extortion there was no evidence of bribery or extortion kickbacks anything like that against her but before I turn to Ms. Harris's unique circumstances I did want to talk about the fact that and when in reviewing the materials I came across one additional respect in which the indictment is completely incomprehensible the two prosecutors on the case have taken diametrically opposite positions on the two of the counts of the indictment in the government's answering brief the government said at page 41 that counts 2 and 18 are not related to CBL or nuisance therefore count 2 has to go because it's not a CBL or nuisance count which are the honest services counts and count 18 drags the regency contract into this action but in fact the original prosecutor in writing the indictment indicated that counts 2 and 18 only relate to the nuisance abatement count and we know that because the prosecutor only included Thomas in the AGS counts that are related to the nuisance abatement contract so the prosecutor who wrote the indictment said 2 and 18 only relate to nuisance abatement the prosecutor's answering brief on appeals says counts 2 and 18 can't relate to the nuisance abatement contract and that's just one of the ways in which my other colleagues have touched on this indictment is incomprehensible and the jury instructions and the prosecutor's closing argument said look at the indictment that's going to tell you what honest guidance they were told to look at the indictment which even the prosecutor the defense counsel no one can understand the indictment in this case in that way is diametrically different from the case in Rodriguez where the jury was told you have to find pecuniary or economic loss we weren't given that kind of opportunity in this case and that's why when the court says below well I think I look at this morass and I think I find enough to support bribes and kickbacks that's not true as to my client there's nothing about about in more detail later but secondly that's not the only question the second question is what could have been in the case had we had a constitutionally valid indictment and constitutionally valid instructions had the jury been appropriately instructed that they had to find kickbacks or bribery my client could have taken the stand and said I knew nothing about kickbacks or bribery I was only involved in this to help my nephew I didn't know what was going on I took I took over when my nephew was kicked out because he was in fact involved in asking for kickbacks I then scrambled to do what I could to support the contracts on behalf of AGS but I didn't know how the contracts had been procured and I wouldn't have my client would say I would not have become involved in anything like bribery or kickbacks so the question this case is not just what's there but what's not there what could have been there had we had a constitutional indictment and a constitutional instructions but now I want to turn for a few minutes and I'm not sure what my time is because I had seven minutes to begin with and I want to reserve two minutes for a bubble but on the clock it says eight minutes I want to make sure that I do have almost nine minutes remaining so just when it gets down to three stop thank you very much sorry I can't do math and I'm so nervous but as to my client the Regency contract the allegation as to Regency is not that a 20% finder's fee is somehow unethical the allegation is that the finder's fee was taken out with no finding being done because the contract was presented with that and then AGS just carved out a 20% finder's fee there's no evidence my client knew anything about that the evidence is that the contract was presented to her by Julio Nalls the government's witness he said here Paula here's the contract sign it and she trusted him and she signed it there's no evidence she knew how the contract had been procured procured by AGS Nalls was the government's witness he didn't come up here to take the stand and say I told Aunt Paula when I gave her the contract to sign that we hadn't done anything for the contract and if he'd been willing to say that the government would have had him say that he told her it was a good deal for AGS she believed him and she signed it because she trusted him she didn't know anything about bribes or kickbacks the same council aren't we entitled though to look at the at the overall record and to say it is just utterly implausible that with just two employees of AGS and getting hundreds of thousands of dollars and when you compare the overall money that Miss Harris took in compared with her responsible employment at Bank of America over a course of many many years that she didn't know what was going on I think I think it's absolutely true Miss this was just a really good business deal she didn't have to do anything and money just floated in hundreds of thousands of dollars well first of all she didn't know that in fact in the nuisance abatement contract money what things were being done there's no dispute that there were high subcontractors and that when she took over just just an enormous profit to AGS well when she took over the nuisance abatement contract she gave more work to the subs so she was giving more work to the subs and with respect to the CBL contract she hired an independent contractor she hired an accountant she hired attorneys she hired a former Linwood employee to help her out and then she hired also a graphics designer and printer she hired people to help her out and she wasn't she never intended to perform the contracts once she was thrown into it because Knowles was asked to leave she then did everything she could to perform AGS's obligations in a very short period of time to get herself out from under yeah but she also knew that she was that she that she was not qualified by virtue of her experience to do what she was hired to do she hadn't she had no experience in the transportation industry she had no she had no public experience no administrative experience your honor she was not intending to perform though she and she and it was in the intention for the day one that Knowles was going to be doing the performance so she knew that Knowles wasn't that Knowles wasn't qualified either well with respect to some of the contracts I think the CBL involved transportation in Linwood and he knew Linwood he had been involved in Linwood politics for years so knowledge of Linwood was a valid a valuable asset to bring to the table in that contract and the same was true with the nuisance abatement he knew not who knew he knew Linwood because he was related to the mayor into this and who was also a member of the City Council but that seems to have been his only qualification but he was also he had been he was involved in Linwood politics in various contexts and he knew Linwood that's something to bring to the table that's a valuable asset in these contracts and that that's that's useful if you're if you're portraying yourself as a lobbyist not as a transportation consultant well the transportation issues though we're how you're going to reroute that the trolley so that it best serves Linwood residents so someone who knows Linwood is qualified to do that and he then he could have brought in help just as Paula did when she became involved brought in the help of independent experts in order to assist them in fulfilling the obligations and if I've answered that question I want to make sure that I don't infringe on somebody else's time and also to reserve some time for rebuttal. Thank you. Good morning Cheryl Brayman, I'm here with Steve and Thomas. I just want to emphasize that this case is so far outside of all the other post-skilling cases that I've read. Largely because of all the problems that we're seeing in this case I mean we've got an indictment that's so complex that even if you look at the summary that co-counsel drafted it's still hard to put it all together and when you look at the counts as charged the conduct is repeated over and over and over in different counts and then the government's overwhelming case as as prosecuted as indicted as argued based on conflicts of interest and exorbitant city contracts a jury that's confused asked for help district court doesn't give them any help that's that's amazing I mean it was hard for the lawyers to understand the indictment over a long period of time I don't I don't see how the jury could have done that and so then you come to the conclusion that well how did the jury compartmentalize the evidence was that possible I think in months and months and months of litigation of this case and pouring over the evidence and the indictment the charges it still remains a confusing picture well under these circumstances this case exists in a category of its own no other post-skilling case even comes close to presenting this kind of scenario and so with in that respect it's really unique now I don't want to really go over I join of course my co-counsel and don't need to go over the the multiple construction layers that are also part of this this equation I just want to touch on the quid pro quo which co-counsel just spoke about and the fact that the in exchange for language is missing from the instructions and from the government's argument no the government's argument on bribery was half a page consistent case be re-indicted and retried if it goes back I mean if we were to agree with you I'm sorry could this case be re-indicted and retried if we were to agree with you yes I imagine yes except in that unless there's an issue with insufficient evidence of course Senate can't I mean it's hard you know you would have to look at each and every count to make that decision with respect to yeah with respect to a retrial and the bribery count mr. Thomas there's a lot of evidence showing that there was no separation between mr. Thomas and Richards now a quid pro quo bribery charge in my mind contemplates a certain separation between the person that's giving something in exchange for the influence of another to do something specific in this case there was no separation Richards was essentially going into his own bank account writing the check and then he actually took the check over to the printing company kept the stubs and kept the check we kept a copy of the check Thomas had no say no power and no resources with which to bribe anybody and in fact the conduct that's charged in counts 30 and 31 the bribery counts is essentially the same conduct that was charged in counts 35 to 39 which the government at page 39 in its brief admits did not involve bribery or kickbacks but there's virtually no distinction between those counts and 30 and 31 in 35 the indictment charges Richards with soliciting campaign contributions from contractors and lobbyists with interest in Linwood and with projects pending before the City Council how's the jury going to differentiate those counts from the bribery counts or they're just going to assume if they're confused and they don't understand the indictment that well that's on services fraud this must be on the bribery must be on a services fraud we just can't tell what they decided and I think from you know given this record and these problems in this unique situation affirming would be like directing a verdict for the government and under done I don't I don't think the court can do that all right well you're over your time but I'll get okay that's okay I'll see my rebuttal time you'd please the court Ilana arts and on behalf of the United States the defendants convictions were already affirmed on direct appeal so we are here only to decide a narrow issue the skilling issue and the framework for analyzing that skilling claim was set forth in this court's decision before skilling was decided right yes but it was sent back to consider to consider in light of the skilling issues that the district court considered on remand and that skilling claim is analyzed under the framework set forth in Rodriguez and that is a two-part framework first we examine the indictment to ascertain whether the defendants were on notice that they were facing charges including kickbacks and bribery and second because it is conceded that in this case the bribery and kickbacks was the instructional error plain error and that is governed by the standard in Hedgepeth v. Pulido and netter as to whether it is clear beyond a reasonable doubt that a rational jury would have found the defendants guilty even absent the error so let me start briefly with the indictment and then turn to the issue under Hedgepeth v. Pulido skilling and this courts cases such as Rodriguez and Milovanovic look at the substance of the allegations the issue is not whether the word bribe or kickback was used and the issue is not whether there were also allegations involving non-disclosure in Rodriguez there were also allegations involving non-disclosure the issue is has to be looked at under the backdrop of skillings description of the McNally case which although it was a non-disclosure theory skilling described that as your classic kickback scheme and it described it as a public official in exchange for routing Kentucky's insurance business through a middleman company arranged for that company to share its commissions with entities in which the official held an interest this was no mere failure to disclose a conflict of interest rather the official conspired with a third party so that both would profit from wealth generated by public contracts that description of this case in the commuter bus lines in exchange for renewing CBL's trolley contract Richards arranged for CBL to give a kickback in the form of a consulting contract to AGS similarly with the nuisance abatement contract Richard arranged for Thomas's company to receive this nuisance abatement contract in return for a kickback of $4,000 a week to AGS and then they're going to then go out and subcontract this further so again both of these contracts show exactly what skilling says a kickback is conspiring so that both would profit from the wealth generated by public contracts and then we have an additional bribery element in the renewal of the nuisance abatement contract and that was that Thomas bribed Richards to renew that contract as well as to obtain this new trash contract so under the first inquiry in Rodriguez clearly the indictment here states an offense under skilling now we have to turn to the instructional error because the instructions here like the instructions in Rodriguez and the instructions here were very similar were not limited to a scheme based on bribery and kickbacks and by the way I would point out that with respect to Rodriguez and whether there was an instruction there about economic harm this court held in Milovanovic that economic harm is not an element of honest services fraud in a public case such as this one so let's look at the standard in Hetchpeth v. Polito whether it's clear beyond a reasonable doubt that a rational jury would have found the defendants guilty of honest services fraud absent the error as to Richards and Thomas I would submit that this case is like this court's case in Wilkes where the court said that the jury verdict on the separate substantive count of bribery confirmed beyond any reasonable doubt that the jury would have convicted even if the instructions were limited to bribery and kickbacks and that's what we have here in connection with the CBL contract we have a conviction Richards was convicted of extortion of kickbacks and with respect to the nuisance abatement renewal contract which is the portion of that contract that all of the honest services fraud counts relate to we have two bribery convictions Thomas was convicted of bribing Richards so as to those two we would argue that it falls under Wilkes as to Harris I think the judge by me correctly noted that what we have to do is look at the evidence based on the the evidence that was presented at trial we have to look at whether there is a reasonable doubt that this jury which convicted her of honest services fraud would have not done so on a bribery and kickback theory but only would have done so on a nondisclosure theory and that also has to take account of what her defense was and you know her current claim that you know I would have testified I didn't know anything about bribes or kickbacks but her defense what was the evidence that she knew anything about the fact that Thomas was making campaign contributions to Richard in exchange for the nuisance abatement we didn't have direct evidence of that but necessarily I mean okay how would she necessarily know that particular aspect she wouldn't but the nuisance abatement contract was didn't have direct evidence that she knew about Thomas's bribe but she clearly knew that it was a kickback arrangement and again you know let me just go back briefly to the evidence that she clearly knew that that was a kickback arrangement well your honor you know that particular contract well as we've tried to explain her role in this you know her role as the president of AGS was to do all of the banking to write all of the checks and as of July 2001 when Knowles was gone she was AGS she was the only part of AGS there were no other employees there was nobody else doing any work her defense was I was just there to help my nephew I didn't know anything about what was going on how would she know about the checks that Thomas wrote to Richard it's not our specifically about the bride charged her with those counts based on a kickback theory because the nuisance abatement contract clearly was a kickback from Thomas to AGS that Thomas was doing no work he did absolutely nothing they you know anything that Thomas had to turn into the city AGS prepared AGS is getting $5,000 a week of which they're kicking back $4,000 and she's the one handling the money she knows all this she's writing all the checks to the to the people who are actually doing the work for $800 to $1,200 a week she knows they're getting $4,000 I'm you know I'm somewhat familiar with how campaigns work and how city government works and I'm just wondering when Thomas is writing checks to Richards campaign how does Harris know about that it's not our specifically the renewal of the nuisance abatement contract and a new contract that Thomas was getting our contention is that original contract which went through the renewal was was a kickback it was a it was a contract that was originally arranged because when it was issued was Harris part of AGS yes she was part of AGS was the original original yes Harris was always the president of AGS AGS was formed at a time when Knowles was out of work and needed employment and Thomas was out of work and needed employment and so there was a plan to get this contract for Thomas and he's gonna kick back $4,000 a week to AGS and then AGS will hire somebody due to the work and they're gonna both profit from the wealth generated by public contracts that's a kickback and go who was hand not only signing all the contracts but handling all the money so you know and again virtually all of AGS is work was from Linwood contracts they didn't have any other work the Thomas made the payment the $5,000 payments to am am AC and that's that's the heart of the bribery con correct okay and Harris wrote two checks to am AC shortly after that how they before she wrote the day before Thomas wrote right okay and did we ever find any link did the government ever allege any link between those two acts we did not allege the bribe in the same way with respect to her although again the timing remember was those payments were made at the same time that the nuisance abatement contract was renewed and in the grand jury Harris testified I made that payment in order to keep our contracts but with Thomas we had the extra piece of evidence you recall that his son testified you know I asked my dad what he does for a living and he said I help people with their campaigns in exchange for contracts to clean up the city so it was clear that that was a bribe and you know I also just want to point out briefly in response to mr. Thomas's counsel's statement in particular you know the notion that somehow this case was not tried on a bribery or a kickback theory in his opening statement Thomas's counsel this is at page 114 of the government's excerpts of record this whole case as it relates to mr. Bevin Thomas boils down to quid pro quo did he give something in exchange for the two contracts that he worked hard to get mr. Thomas's closing argument the first thing he's you know almost the first thing he says this is at page 720 of Richard's excerpts of record I'm here to explain why you should vote not guilty on whether or not Bevin Thomas paid to get those contracts and it ended with there was no quid pro quo so to say that this case was somehow tried solely on an on a non-disclosure theory just doesn't comport with the record but again your honor in answer to the question about the the honest services counts relating to the nuisance abatement contract as they relate to Harris there was overwhelming evidence that she knew these were not legitimate contracts she didn't know anything about transportation consulting she didn't know anything about doing cleanup work nobody they could be non-legitimate contracts and still not necessarily involved her knowledge of bribery or kickback schemes well with respect to knowledge of kickbacks though your honor what else would it be when HES is formed as a company to get these subcontracts and again they're not the main contractor they're always the consultant or the subcontractor because that's the secret party that is in a position to get the kickback and she knows her nephew she knows that Knowles doesn't have any any ability to perform these functions or any knowledge of them and then after Knowles leaves in July 2001 although her going on all I did was try to help my nephew she didn't close up shop in July 2001 no she kept on going and all but two of the honest services fraud counts alleged mailings that occurred during the time when Harris was the only one at HES Knowles was not there at that point she was in constant contact with Richards we had phone records showing that she was in constant contact with the attorneys representing HES we had billing records and attorney testimony showing that as well as Knowles testimony and so her claim that she was not aware that these were basically they had to be kickbacks because they were not legitimate in the sense that they were not capable of doing the work on the transportation consulting contract he did not he testified for the government and he did not have any deal was he charged he was not charged and so again I do want to make clear that we are not in any way claiming that Harris was aware that Thomas had paid bribes at the same time that she made this payment with respect to the nuisance counts it's based on a kickback theory and the CBL contract is only based on the kickback theory but again it's not required that Harris knew for example that CBL was extorted into this deal they could have been complicit from the perspective of Harris but she knew at the time that she sent these invoices that work was not being done and for $7,500 HES was not capable of doing this it had to be a kickback there's nothing else it could have been it was not a pure non-disclosure and again I would point out that we have to look at what her defense was her defense was I didn't know anything so it's not any different to say well I didn't know about non-disclosures I didn't know about you know bribes or kickbacks I don't think her defense would have been any different so with respect to the instructional error it was obvious from the structure of both of these arrangements as well as from the fact that HES was not capable of performing them that these were not legitimate contracts they were kickbacks she knew what was going on from the get-go but certainly as of July 2001 when she was the only one running these companies finally I just want to very briefly even though I I don't think that we will ever get to the prejudicial spillover issues because these counts under honest services fraud clearly were based on either a bribery or kickback theory I would just point out that the government's overall point here is that evidence can be introduced on more than one theory we have cited two cases under skilling that rejected post-skilling prejudicial spillover claims Riley from the Third Circuit and Joshua from the Seventh Circuit there haven't been any contrary cases cited by the defense that you can consider evidence for both theories and in this case if the defendant's claim is that somehow there was prejudice because the defendants were tried on a non-disclosure theory that is a valid theory of honest services that is a valid theory for money and property fraud so there can't be any prejudicial spillover finally I would just like to respond to a couple points made by opposing counsel with respect to counts 2 and 8 the government conceded that count 2 should be dismissed but not count 18 which is the money and property fraud and that related to contributions that Thomas and Harris made to mid city support group which was a group that Thomas was supporting in Compton a neighboring city to Linwood because he had some allies and he had some business interests there so we do think that that is tied to the non-disclosure theory but the government's position was we couldn't say for sure that it was tied to the bribery or kickback theory because it's not like the other counts which charged an invoice or the campaign literature that the bribe paid for that were clearly directly tied to one of those is based on the regency contract he was asked in an interview whether he had spoken to Ricky Ivey who was AGS's attorney about that contract he said no and in fact there was extensive evidence that he had done so because we had billing records attorney records that he was involved in those in those discussions if there are no further questions from the court. Let me just ask you to refresh our memories on which counts that have been stricken and which do you concede should be stricken. Okay as to the honest services fraud counts the the counts that were stricken were counts 10 and 11 and those that were mailings that related to the regency contract and then there was a separate scheme alleged as to Richards in counts 35 through 39 and the basis of that scheme it was never based on bribery or kickbacks it was based on the fact that he raised money under the title of Richards for Senate which was an old campaign committee and instead he used that money to fund his Linwood re-election campaign and then he put out literature. I really wanted you to spell out exactly which. So those were the ones that the district court dismissed the ones that the government on appeal has indicated should be dismissed are count 2 which related to. Can I give the number? Just give the numbers. But not 18 and then counts 14 and 15. And as to the concessions on appeal do you agree that this that we would have to just in view of those send this case back we'll be sentencing? Well your honor those counts do not knock out any contract. There are still in other words there there are still honest services fraud counts that relate to the CBL contract there are still. Just answer my question directly. No I don't think that there's a per se rule that requires it. That's a matter of the court's discretion and we've laid out the law at the end of our brief. There's not a per se rule that prohibits it either. Correct. Okay that's all I wanted to know. Thank you.  Thank you counsel. All right. We'll give you three minutes. Just a couple of things. This lengthy argument about the facts about Paula Harris and all of this really should be done to a jury on a properly charged indictment. The government argues that this case was tried as a kickback bribery scheme. The problem that you have is this Supreme Court decision in Hedgepeth and the standard that it lays forth. Yes the Hedgepeth is a case of alternate theories where they were actually alternately charged. There's a 1341 and a 1346 and the jury is instructed actually Hedgepeth was a murder case. But there were two separate theories charged under one count so the jury could do it under A or B or both. And that's the same case situation as in like say for instance Riley. In this case all of the first 20 honest services fraud claims are based on a single theory. And that single theory is nondisclosure of conflicts of interest. There is no way under McCormick or any of those cases that they can stand regardless of whether this case could be restated and retried under a bribery and kickback standard. There certainly is enough in this case that if the government wants to go back and get an indictment that actually mentions the word bribery or kickback, they probably have enough evidence to go back and re-indict and recharge. But I don't think that they can now cobble back in and say, oh, this was really all about bribery and kickbacks from the very beginning when they never mentioned the word, because it's so much easier to do a nondisclosure. It's so much easier to say here's these contracts. They were doing this stuff. It was unnecessary. It was exorbitant. This was sisters and family slapping each other on the back and cronies and this sort of thing. That's how they charge these honest services fraud cases. And there certainly is probably something in here that could lead to a bribery kickback on some of the charges, but that is not how it was tried. That is not how it was charged. And this Court cannot take the place of the Sixth Amendment jury trial right to retry the case based on what is in the record right now. So the question is how much besides the 10 honest services, 20 honest services fraud counts can stand, or is it just better to send the whole thing back and let the government make their eloquent arguments about what might or might not be in another trial with a lot of the extraneous material out of here? Just a quick statement. Rodriguez and Milanovic were not honest services fraud conflict of interest cases, nondisclosure of conflict of interest cases. Look at those two cases. There's not a peep about nondisclosure of conflict of interest in either of those cases. In fact, Milanovic, the question was, do you need to be a fiduciary? So it's not the same sort of thing that you can bring together all these charges just based on the fact that there were probably ethical violations and there probably are conflict of interest violations under California law in this case, but it's not a Federal crime as it was charged. All right. Thank you, counsel. Thank you. I just want to respond with respect to some of the comments that were made about Ms. Harris. I want to emphasize she's an unsophisticated person. She had a high school education. At the time of these contracts, she was caring for two children and a disabled husband. She was working full time. She's not someone who had a lot of time to analyze what was going on. And the argument that she must have known because money was coming in, because Manalovic may have not been the most qualified person for these contracts, is not enough to convict her of fraud when she was presented with an indictment and jury instructions that were unconstitutional. It doesn't mean that she knew and intended fraud, bribes, kickbacks, which is what the Court has defined. Counsel, I'm looking at what I think is an exhibit that talks about her gross income for 1999 through 2002. Her gross income in 1999 was well below $50,000. That's her bank income. And that's the same income she received in 2000, 2001, and 2002. But in 2000, all of a sudden, her income from other sources, from AGS, jumped well over $200,000 and over $250,000 in 2001. I think that's gross. That's good work if you can get it. Well, it is. I think that's gross to AGS, and AGS obviously had expenses. So I don't think she netted. Well, the government indictment says that she got something like $1,000 a month when she was working, when Knowles was doing the work, and then $1,500 a week when Knowles was out of the picture. But I do want to respond, Your Honor, to your comment about Harris writing two checks to AMAC, because the evidence shows that Richards had AMAC falsified invoices showing that those two payments were for other candidates. And the government says in its brief that her grand jury testimony was consistent with those false invoices. Richards gave her false invoices and she paid them, thinking she was contributing to other candidates. Another point I wanted to make was the government said that she knew that Knowles was not doing work on the CBL contract, and that's absolutely false. Even at trial, Knowles didn't admit he wasn't doing work on the CBL contract. And the government presented Knowles to testify, and Knowles never said, I told Aunt Paula that I was not doing work on the CBL contract. She absolutely didn't know. And there's evidence the government also asked why didn't she just drop the contracts when Knowles left the situation. It's because she intended, and the PSR acknowledges, she intended to leave at the end of the year. She didn't want to leave Linwood in the lurch. She hired six experts in the month after Knowles left to perform AGS's obligations under the contract. She wasn't someone who wanted to leave AGS or Linwood in the lurch. And the city approved payment saying that she had made progress. So to say that she was committing fraud is to basically usurp what the city said, which was that she was making progress in performing AGS's obligations under the contract. If there's no questions, then I'll submit. Thank you, Your Honor. All right. Thank you very much, counsel. United States v. Harris, Richards and Thomas will be submitted. And this session of the court is adjourned for today. All rise. This court for this session stands adjourned. Thank you.
judges: Fletcher, Wardlaw, Bybee